**UNITED STATES DISTRICT COURT**          **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | |
| *versus* | § § | CIVIL ACTION NO. 1:22-CV-372 |
| JOHN PECK, | § § § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

Pending before the court is Plaintiff Allstate Vehicle and Property Insurance Company's ("Allstate") Motion for Partial Summary Judgment (#16), wherein Allstate asks this court to grant summary judgment on all of Defendant John Peck's ("Peck") counterclaims.  Peck filed a Response in opposition (#17), and Allstate filed a Reply (#18).  Having considered the pending motion, the submissions of the parties, the pleadings, the record, and the applicable law, the court is of the opinion that Allstate's motion for summary judgment should be granted in part and denied in part.

I.     Background

The present lawsuit arises from a fire that destroyed Peck's home located in Newton County, Texas.  On March 7, 2020, one of Peck's neighbors called emergency services to report a fire on Peck's property.  Peck maintained an Allstate insurance policy, which provided coverage for the loss of property with limits of $252,986.00 for the structure, $177,091.00 for any unscheduled personal property, and $25,299.00 in additional living expenses (the "Policy").  Peck submitted an insurance claim to Allstate on March 7, 2020, hours after the fire occurred.

The investigation proceeded slowly, which Allstate claims is attributable to a number of external factors.  First, Peck filed his insurance claim approximately four days before the coronavirus pandemic ("COVID-19") entered the United States and shut down businesses, halted all court proceedings, displaced a large number of people, and disrupted daily activities for months on end.  Second, Allstate alleges that scheduling interviews and retrieving information from Peck proved to be difficult because his job required him to be away from home for extended periods of time.  Lastly, Allstate notes that it struggled to obtain first-hand information from Peck due to the criminal charges pending against him in state court at the time of its investigation.  During the pendency of the investigation, Allstate paid $19,441.00 to cover Peck's additional living expenses.

On September 8, 2022, Allstate sent a letter to Peck denying his claims under the Policy. Allstate stated that its investigation revealed that the fire was intentionally set and that either Peck set the fire himself or directed someone else to do so.  On September 9, 2022, Allstate filed its Complaint (#2) in the Eastern District of Texas, Beaumont Division, seeking declaratory relief. Allstate's Complaint asks the court to declare that Peck's property loss is excluded from coverage under the Policy and award the amount owed to Allstate by Peck for the payments it previously made pursuant to the Policy.

On November 28, 2022, Peck filed his Answer (#3).  Peck subsequently filed his Counterclaim (#5), asserting breach of contract, multiple instances of noncompliance with the Texas Insurance Code, and breach of the duty of good faith and fair dealing.  On August 2, 2024, Allstate filed the present motion seeking summary judgment on all of Peck's pending counterclaims.

II.     Analysis

A.     Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Union Pac. R.R. Co. v. City of Palestine*, 41 F.4th 696, 703 (5th Cir. 2022); *United Steel, Paper & Forestry, Rubber Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Anderson*, 9 F.4th 328, 331 (5th Cir. 2021); *Smith v. Harris County*, 956 F.3d 311, 316 (5th Cir. 2020); *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *MDK Sociedad De Responsabilidad Limitada v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022); *Goldring v. United States*, 15 F.4th 639, 644-45 (5th Cir. 2021); *Playa Vista Conroe v. Ins. Co. of the W.*, 989 F.3d 411, 416-17 (5th Cir. 2021); *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019). To warrant judgment in its favor, the movant "must establish beyond peradventure *all* of the essential elements of the claim or defense." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 302 (5th Cir. 2020) (quoting *Dewan v. M-I, L.L.C.*, 858 F.3d 331, 334 (5th Cir. 2017)); *accord Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 378 (5th Cir. 2011).

"A fact issue is 'material' if its resolution could affect the outcome of the action." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015) (quoting *Burrell*

*v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007)); *see MDK Sociedad De Responsabilidad Limitada*, 25 F.4th at 368; *Lexon Ins. Co., Inc. v. Fed. Deposit Ins. Corp.*, 7 F.4th 315, 321 (5th Cir. 2021); *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020). "Factual disputes that are irrelevant or unnecessary will not be counted." *Tiblier v. Dlabal*, 743 F.3d 1004, 1007 (5th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *accord Valencia v. Davis*, 836 F. App'x 292, 296 (5th Cir. 2020); *see Dyer*, 964 F.3d at 379. "An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Gerhart v. Barnes*, 724 F. App'x 316, 321 (5th Cir. 2018) (quoting *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001)); *accord Johnson v. City of San Antonio*, No. 22-50196, 2023 WL 3019686, at *6 n.7 (5th Cir. Apr. 20, 2023); *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 340 (5th Cir. 2019). Thus, "[a] genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *MDK Sociedad De Responsabilidad Limitada*, 25 F.4th at 368 (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)); *Sanchez Oil & Gas Corp. v. Crescent Drilling & Prod., Inc.*, 7 F.4th 301, 309 (5th Cir. 2021); *Dyer*, 964 F.3d at 379; *Hefren v. McDermott, Inc.*, 820 F.3d 767, 771 (5th Cir. 2016). The moving party, however, "need not negate the elements of the nonmovant's case." *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)); *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014); *see Savoy v. Kroger Co.*, 848 F. App'x 158, 160 (5th Cir. 2021).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific

facts, to demonstrate the existence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322 n.3; *see Beard v. Banks*, 548 U.S. 521, 529 (2006) (quoting FED. R. CIV. P. 56(e)); *Flowers v. Wal-Mart Inc.*, 79 F.4th 449, 452 (5th Cir. 2023); *MDK Sociedad De Responsabilidad Limitada*, 25 F.4th at 368; *Acadian Diagnostic Lab'ys, L.L.C. v. Quality Toxicology, L.L.C.*, 965 F.3d 404, 410 (5th Cir. 2020). The court "should review the record as a whole." *Black v. Pan Am. Lab'ys, L.L.C.*, 646 F.3d 254, 273 (5th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)); *see Hacienda Recs., L.P. v. Ramos*, 718 F. App'x 223, 234 (5th Cir. 2018); *City of Alexandria v. Brown*, 740 F.3d 339, 350 (5th Cir. 2014). All the evidence must be construed in the light most favorable to the nonmoving party, and the court will not weigh the evidence or evaluate its credibility. *Reeves*, 530 U.S. at 150; *Seigler v. Wal-Mart Stores Tex., L.L.C.*, 30 F.4th 472, 476 (5th Cir. 2022); *Batyukova v. Doege*, 994 F.3d 717, 724 (5th Cir. 2021); *Lyons v. Katy Ind. Sch. Dist.*, 964 F.3d 298, 302 (5th Cir. 2020). The evidence of the nonmovant is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in his favor. *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (quoting *Anderson*, 477 U.S. at 255); *Seigler*, 30 F.4th at 476; *Batyukova*, 994 F.3d at 724; *Lyons*, 964 F.3d at 302. The evidence is construed "in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Spring St. Partners-IV, L.P. v. Lam*, 730 F.3d 427, 435 (5th Cir. 2013) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)); *accord Lexon Ins. Co., Inc.*, 7 F.4th at 321; *Geovera Specialty Ins. Co. v. Odoms*, 836 F. App'x 197, 200 (5th Cir. 2020) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

B.     Declaratory Judgment Act

Before delving into Allstate's motion, the court must address an issue raised in Peck's Response regarding the Declaratory Judgment Act ("DJA").  Peck maintains that the court does not have the authority to grant summary judgment because Allstate filed a legally invalid declaratory judgment action.  Specifically, Peck asserts that Allstate is seeking a declaration of non-liability in tort, which is generally impermissible under the DJA.[1]  Peck contends that, because Allstate brought a legally invalid action, this court does not have the authority to grant Allstate's motion for summary judgment.

The DJA provides in relevant part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).  When considering whether a declaratory judgment action is proper, a district court must determine:  "(1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action."  *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 387 (5th Cir. 2003); *accord Sasol N. Am., Inc. v. GTLPetrol, L.L.C.*, 682 F. App'x 312, 314 (5th Cir. 2017); *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000); *JMCB, LLC v. Bd. of Com. & Indus.*, 293 F. Supp. 3d 580, 597 (M.D. La. 2017).

---

[1] Peck supports his contention that the present action is legally invalid with citations to both Texas and Federal law.  The Texas Declaratory Judgment Act ("TDJA"), however, does not govern proceedings pending in federal court.  *Rogers v. City of Yoakum*, 660 F. App'x 279, 284 (5th Cir. 2016) (holding that the TDJA does not apply in federal court).  Thus, the court will analyze Peck's assertions only under federal law.

Here, the parties do not dispute that Allstate's declaratory judgment action satisfies the above elements. Rather, Peck contends that Allstate's declaratory judgment action is invalid because it contravenes the purpose of the DJA.[2] Courts have recognized that the DJA is intended to settle a particular kind of controversy. *MH Sub 1, LLC v. FPK Servs., LLC*, No. 1:18-CV-834-RP, 2019 WL 13138139, at *5 (W.D. Tex. June 21, 2019). "[T]he purpose of the Declaratory Judgment [A]ct is not the declaration of non-liability for past conduct, but to settle actual controversies before they ripen into violations of the law or [a] breach of some contractual duty and to prevent the accrual of avoidable damages to those uncertain of rights." *Id.* (quoting *Am. Eurocopter LLC v. AIG Aviation, Inc.*, No. 4:09-CV-137-Y, 2009 WL 10705171, at *2 (N.D. Tex. June 19, 2009)); *see Ray-Bryant v. Optimized Process Designs, LLC*, No. 4:23-CV-03275, 2024 WL 844933, at *4 (S.D. Tex. Feb. 26, 2024). Consequently, it is improper for a tort defendant to maintain a declaratory action establishing nonliability for a past injury. *Ray-Bryant*, 2024 WL 844933, at *4; *Precision Drilling Co. v. Crum & Forster Ins. Co.*, No. 4:21-CV-00570, 2021 WL 4820670, at *2 (S.D. Tex. Oct. 15, 2021).

In this instance, Allstate's Complaint asks the court to declare that "the Policy is void as to Defendant" and that "Allstate has no liability to Defendant for the Fire, the Insurance Claim or under any statute or common law arising in any way out of the Policy or Allstate's handing of the Insurance Claim." Allstate's request that the court declare that the Policy is void raises a contractual dispute whereby an early declaration may prevent the accrual of additional damages. *See MH Sub 1, LLC*, 2019 WL 13138139, at *5. Further, courts have long recognized that

---

[2] Peck fails to articulate or explain his contention adequately. Nevertheless, the court will consider Peck's assertion and evaluate it under the relevant federal law.

insurers may maintain a declaratory judgment action to "clarify their rights and obligations under their insurance policies." *Golden Bear Ins. Co. v. 34th S&S, LLC*, No. H-23-1933, 2024 WL 3321508, at *3 (S.D. Tex. June 26, 2024); *see Allstate Fire & Cas. Ins. Co. v. Love*, 71 F.4th 348, 350 (5th Cir. 2023).

Nevertheless, Peck maintains that Allstate improperly seeks a declaration that it is not liable to Peck for its handling of his claim. Peck's contention, however, is misguided and conflates Allstate's requested declarations with his own counterclaims. Allstate does not seek summary judgment on its proposed declarations. Rather, Allstate's motion asks the court to grant summary judgment on Peck's counterclaims. Despite the subtle nature of this distinction, the impact is significant. Because of the unique nature of declaratory actions, Peck had two avenues by which he could advance his claims against Allstate once it filed its declaratory action in federal court. Peck could pursue his allegations against Allstate by filing a counterclaim under Rule 13 of the Federal Rules of Civil Procedure. FED. R. CIV. P. 13. Alternatively, Peck could file his claims against Allstate in a separate action in a venue of his choosing. *OPF Enters., LLC v. Evanston Ins. Co.*, No. 4:21-CV-01835, 2021 WL 4710948, at *5 (S.D. Tex. Oct. 7, 2021).

Generally, Peck's counterclaims would be compulsory under Rule 13(a), such that he might risk his claims being barred by *res judicata* if he filed a secondary action. *Id.*; FED. R. CIV. P. 13. An exception to *res judicata* exists, however, for prior actions that seek only a declaratory judgment. *ASARCO, L.L.C. v. Montana Res., Inc.*, 858 F.3d 949, 956 (5th Cir. 2017); *OPF Enters., LLC*, 2021 WL 4710948, at *5. As the United States Court of Appeals for the Fifth Circuit has recognized:

> The declaratory claim on its own typically will not preclude future claims involving the same circumstances (as noted, issue preclusion may still apply to any

8

declaration the court issues). But in a case involving both declaratory claims and ones seeking coercive relief, the former will not serve as an antidote that undoes the preclusive force that traditional claims would ordinarily have.

*ASARCO, L.L.C.*, 858 F.3d at 956.  The Fifth Circuit noted that applying the preclusive effect of Rule 13 would contravene the purpose of the DJA and unfairly strip the declaratory defendant of the opportunity to assert his claims as a plaintiff in a forum of his choosing.  *OPF Enters., LLC*, 2021 WL 4710948, at *5.  Therefore, a defendant in a purely declaratory action may assert his claims in a separate action because he is not bound by the compulsory mandate of Rule 13.  *See id.*

In the present case, Allstate's Complaint solely requests declaratory relief.  It does not contain any additional claims that would trigger Rule 13's compulsory effect.  As a result, Peck's counterclaims were not compulsory.  Consequently, Peck was free to pursue his claims in a separate suit.  Peck, however, chose to advance his allegations against Allstate as counterclaims.  Because the counterclaims were properly and voluntarily joined in the present action, the court has jurisdiction over said claims.  Therefore, Allstate's request for summary judgment on Peck's counterclaims is properly before the court and may be ruled on accordingly.

C.    Breach of Contract

Peck's first counterclaim at issue arises from a purported breach of contract.  Peck alleges that Allstate breached the insurance agreement by refusing to compensate him for the loss of his home pursuant to the terms of the Policy.  Allstate, however, asks the court to grant summary judgment on Peck's breach of contract claim for two reasons.  First, Allstate maintains that the Policy's "Misrepresentation, Fraud, or Concealment clause," commonly known as a Fraud and

Concealment provision, excludes Peck's property loss from coverage.  Second, Allstate avers that public policy precludes Peck's recovery.

Under Texas law, the essential elements of a breach of contract claim are:

(1) the existence of a valid contract;

(2) the plaintiff performed or tendered performance;

(3) the defendant breached the contract; and

(4) the plaintiff was damaged as a result of the breach.

*Wesdem, L.L.C. v. Ill. Tool Works, Inc.*, 70 F.4th 285, 294 (5th Cir. 2023); *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 415 (5th Cir. 2021); *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170 (5th Cir. 2018); *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018).  A breach occurs when a party fails or refuses to perform an act that it has expressly promised to perform.  *Franconia Assocs. v. United States*, 536 U.S. 129, 142-43 (2002); *TLC Hosp., LLC v. Pillar Income Asset Mgmt., Inc.*, 570 S.W.3d 749, 763 (Tex. App.—Tyler 2018, pet. denied); *Cal. Ins. Guarantee Ass'n v. Hill Bros. Transp., Inc.*, 497 S.W.3d 67, 76 (Tex. App.—Austin 2016, no pet.).  "A plaintiff suing for breach of contract must point to a specific provision in the contract that was breached by the defendant." *Baker v. Great N. Energy, Inc.*, 64 F. Supp. 3d 965, 971 (N.D. Tex. 2014) (collecting cases); *accord Sivertson v. Citibank, N.A.*, 390 F. Supp. 3d 769, 787 (E.D. Tex. 2019).  Moreover, the plaintiff must establish that he performed or tendered performance under the contract.  *Raphael v. Camden Dev., Inc.*, No. 05-24-00053-CV, 2024 WL 4969954, at *5 (Tex. App.—Dallas Dec. 4, 2024, no pet.); *Keaton v. Cmty. Loan Servicing, LLC*, No. 3:22-cv-00172, 2024 WL 691368, at *3 (S.D. Tex. Feb. 20, 2024).

In an action alleging breach of an insurance contract, the plaintiff must establish not only coverage but also that the contract was breached, that the insured was damaged by the breach, and the amount of damages resulting from the breach. *Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.*, 130 S.W.3d 181, 198 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (citing *Emp.'s Cas. Co. v. Block*, 744 S.W.2d 940, 944 (Tex. 1988), *overruled in part on other grounds by State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 714 (Tex. 1996)). Here, the parties do not dispute the existence of a contract, nor do they disagree about whether property loss resulting from a fire would generally be covered under the Policy. Rather, Allstate maintains that the Fraud and Concealment provision in the Policy excludes Peck's claim from coverage and, alternatively, public policy bars Peck from recovering under the contract.

The Texas Insurance Code requires the insurer to bear the burden of proof on matters of avoidance and affirmative defenses. TEX. INS. CODE § 544.002; *Valleyview Church of the Nazarene v. Church Mut. Ins. Co.*, 2:20-CV-222-Z-BR, 2022 WL 1460208, at *3 n.3 (N.D. Tex. May 9, 2022); *J.P. Columbus Warehousing, Inc. v. United Fire & Cas. Co.*, No. 5:18-CV-100, 2021 WL 799321, at *6 (S.D. Tex. Jan. 13, 2021). Section 544.002 provides that "[l]anguage of exclusion in the contract or an exception to coverage claimed by the insurer or health maintenance organization constitutes an avoidance." TEX. INS. CODE § 544.002. Allstate's first assertion encompasses language of exclusion contained in its Fraud and Concealment provision. Allstate's second contention involves an exception to coverage created by public policy. Accordingly, Allstate bears the burden of proof on the propositions it advances. *See id.* Because Allstate bears the burden of proof, it must conclusively establish the applicability of the exclusion or the exception to be entitled to summary judgment. *Guzman v. Allstate Assurance Co.*, 18 F.4th

11

157, 160 (5th Cir. 2021) ("When the movant also carries the burden of proof at trial, as when he asserts an affirmative defense, his burden is even higher; he must 'establish beyond peradventure all of the essential elements of the claim or defense.'"(quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986))).

1.    <u>Fraud and Concealment Provision</u>

Peck's Policy, which was issued on January 24, 2020, provides that Allstate will "not cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance." Allstate maintains that Peck fraudulently concealed facts and made material misrepresentations in connection with his claim. Specifically, Allstate asserts that Peck fraudulently:

(1)    submitted a claim to Allstate, despite intentionally setting the fire;

(2)    misrepresented facts regarding which items were damaged by the fire;

(3)    misrepresented the content and value of the items he claimed as personal property;

(4)    misrepresented the value of items he claimed as damaged personal property; and

(5)    misrepresented the terms of the lease agreement for the rental property he occupied following the fire.

Therefore, Allstate contends that, pursuant to the Fraud and Concealment provision, Peck is not entitled to coverage for the loss of his home.

Despite not being raised by either party, § 705.003 of the Texas Insurance Code governs the enforceability of the Fraud and Concealment provision. Section 705.003 provides that an insurance policy that purports to void coverage due to a misrepresentation or false statement made in the "proof of loss" (1) has no effect, and (2) is not a defense in a suit brought on the policy.

12

TEX. INS. CODE § 705.003(a).  Accordingly, § 705.003 may nullify the validity of the Fraud and Concealment provision when certain criteria are met.

An exception to § 705.003(a) exists if the following three circumstances are satisfied. First, the insurer must demonstrate that the insured made a fraudulent misrepresentation.  *Id.* § 705.003(b).  Second, the insurer must establish that the misrepresentation was material to the question of the insurer's liability under the policy.  *Id.*  Finally, the insurer must show that the insured misled the insurer and caused the insurer to waive or lose a valid defense to the policy. *Id.*  Consequently, the court must evaluate and determine whether § 705.003 applies in the present case before it may consider Allstate's assertions that Peck violated the Fraud and Concealment provision.

a.    Scope of § 705.003(a)

First, the court must determine whether the Fraud and Concealment provision implicates § 705.003(a).  As mentioned above, § 705.003 applies when an insurance policy provision renders the policy "*void or voidable.*"  In contrast, Peck's Policy provides that it "do[es] not cover any loss or occurrence" in which an insured person has made a material misrepresentation. Accordingly, the Fraud and Concealment provision does not render the Policy void or voidable. Rather, it excludes such losses from coverage under the agreement.  Allowing this type of hyper-technicality to prevail, however, would enable insurance companies to circumvent the requirements of § 705.003 and improperly elevate form over substance.  *Temcharoen v. United Fire Lloyds*, 293 S.W.3d 332, 337 (Tex. App.—Eastland 2009, pet. denied) (rejecting an interpretation of § 705.003(a) that promotes form over substance).  The practical effect of Allstate's Fraud and Concealment provision is the same as those targeted by § 705.003, such that

13

a violation of the provision excuses Allstate from paying a claim that would otherwise be covered. *See id.* Therefore, the mere fact that Allstate styled its provision as a policy exclusion does not negate the applicability of § 705.003(a).

Nevertheless, the inquiry does not end there. In its motion, Allstate cites *McEwin v. Allstate Texas Lloyds* to support the validity and applicability of the Fraud and Concealment provision. 118 S.W.3d 811, 817 (Tex. App.—Amarillo 2003, no pet.). The court in *McEwin* analyzed the predecessor to § 705.003—Article 21.19 of the Texas Insurance Code. In *McEwin*, the court concluded that the Fraud and Concealment provision did not implicate Article 21.19. *Id.* The court reasoned that Article 21.19 nullifies a Fraud and Concealment provision only to the extent that it permits an insurer to void the policy for a misrepresentation made in connection with the claimant's "proof of loss." As a result, the court recognized that Article 21.19 applies only upon the satisfaction of the threshold requirement that the misrepresentation was made in connection to the insured's proof of loss. Thus, the court concluded that the applicability of Article 21.19 depended on the nature of the underlying misrepresentation.

In applying the standard above, the *McEwin* court concluded that the insured acted deceptively when he intentionally set his home on fire. The court also recognized that the provision, as applied to the misrepresentations at issue in *McEwin*, did not implicate Article 21.19 because the insured's act of filing an insurance claim after intentionally burning his home did not constitute a misrepresentation made in connection with the proof of loss. *Id.* Specifically, the court reasoned that the plaintiff's "deceptive action in causing the house to be intentionally burned, and filing a report without disclosing his complicity in the fire . . . were a fraud on Allstate without regard to his later false statements." *Id.* Thus, the court concluded that it did not need

14

to consider McEwin's other misrepresentations because all of Allstate's harm stemmed directly from McEwin's first fraudulent act of intentionally setting his home on fire and filing an insurance claim without disclosing his involvement in the fire.

Despite interpreting the predecessor to § 705.003, the court's reasoning in *McEwin* provides significant guidance regarding the proper scope of § 705.003(a). *Temcharoen*, 293 S.W.3d at 337 (noting that cases interpreting the "proof of loss" language in Article 21.19 are highly instructive because the language is substantially similar). In the present case, Allstate maintains that Peck made five separate fraudulent misrepresentations. The first allegedly fraudulent act involved Peck's setting his home on fire and filing a loss report without disclosing his complicity in the fire. As discussed above, the fraudulent act of intentionally setting a fire and filing a subsequent loss report is not considered a fraudulent misrepresentation made in connection with the proof of loss under § 705.003(a). *McEwin*, 118 S.W.3d at 817. Additionally, the alleged harm to Allstate stems from Peck's purported complicity in the fire. Consequently, the Fraud and Concealment provision may be enforced with respect to Peck's initial alleged fraudulent act "without regard to his later false statements." *Id.* Thus, the Fraud and Concealment provision does not implicate § 705.003(a).

### b.    Peck's Alleged Misrepresentations

Having determined that § 705.003(a) does not apply, the court must evaluate whether there exists a genuine dispute of material fact on Peck's breach of contract claim. Again, the parties do not dispute the existence of a valid contract. Rather, Allstate maintains that it has not breached the contract because the Fraud and Concealment provision excludes Peck's loss from coverage. The question of whether the Fraud and Concealment provision applies is a matter of contract

interpretation. *Igwe v. Safeco Ins. Co. of Ind.*, No. A-14-CV-587, 2015 WL 6506391, at *4-5 (W.D. Tex. Oct. 27, 2015). Because Peck's breach of contract claim arises under state law, the court must apply Texas law to interpret the Policy. *O'Gara v. Binkley*, 384 F. Supp. 3d 674, 684 (N.D. Tex. 2019).

Under Texas law, "insurance policies are construed according to common principles governing the construction of contracts, and the interpretation of an insurance policy is a question of law for the court to determine." *Landmark Am. Ins. Co. v. SCD Memorial Place II, L.L.C.*, 25 F.4th 283, 285-86 (5th Cir. 2022). Consequently, if an insurance policy has only one reasonable construction, it will be enforced as written. *Id.* at 286 (quoting *John M. O'Quinn, P.C. v. Lexington Ins. Co.*, 906 F.3d 363, 367 (5th Cir. 2018)).

The Fraud and Concealment provision provides, "[Allstate] do[es] not cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance." Generally, courts apply the common law elements of misrepresentation to assess whether an insured has violated the Fraud and Concealment provision. *Benbow v. Liberty Mut. Fire Ins. Co.*, No. A–12–CV–1164 LY, 2014 WL 690621, at *2 (W.D. Tex. Feb. 21, 2014); *see Martinez v. Allstate Vehicle & Prop. Ins. Co.*, No. H-23-4218, 2024 WL 2806183, at *2 (S.D. Tex. May 31, 2024); *Igwe*, 2015 WL 6506391, at *5. To void an insurance policy under Texas law for misrepresentation, the Texas Supreme Court has held that the insurer must plead and prove the following:

(1) the making of a representation;

(2) the falsity of the representation;

(3) reliance on the misrepresentation by the insurer;

(4) the intent to deceive on the part of the insured in making the misrepresentation; and

(5) the materiality of the misrepresentation.

*Am. Nat'l Ins. Co. v. Arce*, 672 S.W.3d 347, 354 (Tex. 2023) (citing *Mayes v. Mass. Mut. Life Ins. Co.*, 608 S.W.2d 612, 616 (Tex. 1980)); *Igwe*, 2015 WL 6506391, at *5. Because Allstate bears the burden of proof in seeking to deny coverage under the agreement, Allstate must conclusively establish all five elements.

Allstate first contends that Peck "made misrepresentations related to items he claimed were in the Residence and damaged at the time of the Fire." As evidence, Allstate cites the unsworn declaration of Byron Rachal ("Rachal"). Rachal's unsworn declaration lists all the methods by which Peck allegedly disposed of his personal property before the fire. In Paragraph 9, Rachal asserts that Mr. Peck removed most of his personal property from his residence and stored it at his sister's house. Additionally, Rachal notes that Peck had recently filed a theft claim for his personal property, wherein Peck reported that "almost the entire contents of the house were stolen." Lastly, Rachal states that Peck sold multiple items of personal property before the fire.

Peck's Response does not address or refute Allstate's evidence that Peck misrepresented that certain items were damaged by the fire. Nevertheless, Allstate's evidence falls short of conclusively establishing the existence of a misrepresentation. Allstate expends considerable effort demonstrating that Peck removed a number of personal items from the property, an act it contends is inconsistent with Peck's personal property claim.[3] Allstate does not, however, provide any evidence that the items that Peck claims were destroyed in the fire were among the personal items

---

[3] (Pl.'s Ex. B-18, Peck's EOU 19:6-5, 13:10-25, 21:12-22:7, 38:12-39:8, 53:3-15); (Pl.'s Ex. B, Rachal Decl. ¶¶ 9-11).

he purportedly removed beforehand.  Though the court acknowledges the inference Allstate is attempting to draw, it has not provided sufficient evidence to establish conclusively an inconsistency between Peck's claimed losses and the personal property that Peck removed from the house before the fire.  As a result, a factual dispute remains as to the falsity of Peck's representation.  Therefore, the court cannot conclude as a matter of law that Peck's alleged misrepresentation implicates the Fraud and Concealment provision.

The second misrepresentation that Allstate highlights arises from Peck's "misrepresentations as to the contents he claimed as personal property."  Allstate does not clarify how this contention differs from its earlier contention that Peck misrepresented the personal property that was damaged.  Moreover, Allstate cites the same evidence in support of its contention that Peck removed much of his personal property from the residence before the fire.  Thus, for the same reasons discussed above, the court cannot conclude that Peck's alleged misrepresentation implicates the Fraud and Concealment provision.

Allstate further maintains that Peck made a misrepresentation of material fact by "inflat[ing] the value of items he claimed as damaged personal property."  To support its position, Allstate relies again on Rachal's declaration.  In Paragraph 11, Rachal states that Peck inflated the value of the items he claimed as damaged personal property.  Though uncontroverted by Peck, Rachal's declaration does not identify any specific statement by Peck where he allegedly inflated the value of his property.  Rather, Rachal's declaration provides a conclusory statement that fails to substantiate his contention regarding Peck's alleged misrepresentation with any supporting facts.  Rachal neither identifies the property, the values Peck allegedly misrepresented, nor the extent of

the alleged inflation.  Therefore, the court cannot conclude that Allstate has established a material misrepresentation that warrants the application of the Fraud and Concealment provision.

Finally, Allstate alleges that Peck misrepresented the terms of the lease agreement for the rental property he occupied following the fire.  Allstate maintains that Peck inflated the cost of rent, resulting in Allstate's overpayment of Additional Living Expenses ("ALE").  In support of its position, Allstate cites the deposition of Rebecca Morales ("Morales"), who was Peck's girlfriend at the time of the fire.  According to Allstate, Peck rented a trailer home from Morales's mother.  Allstate contends that Peck represented that Morales's mother charged $880 per month for rent.  In contrast, Morales stated in her deposition that her mother charged $600 per month for rent.

Peck expends a significant amount of effort to address the claim that he misrepresented and inflated the cost of the rent.  In his response, Peck highlights that an agent of Allstate dealt directly with Morales's mother, negotiated the rent, and paid the rent via a third party.  As a result, Peck never received the money.[4]  To support his contention, Peck attached multiple email exchanges between Allstate and the Temporary Housing Directory ("THD").  In the exchanges, Allstate and THD discuss potential housing options, the negotiations with Morales's mother, and the ultimate decision to move forward with the trailer home option.  Though the court questions whether Peck was as removed from this process as he intimates, the evidence provided is sufficient to create a genuine dispute of material fact as to whether Peck materially misrepresented the cost of rent.

---

[4] Peck also insinuates that, even if there was a misrepresentation, said misrepresentation was not material because the rent was substantially lower than Allstate's alternative options.  The court need not address this contention in full.  The court, however, rejects the notion that a misrepresentation for purposes of personal gain is permissible, so long as it is better than other alternatives.

Again, the court recognizes that Allstate has provided evidence that Peck fraudulently misrepresented his ALE.  Allstate's evidence, however, is insufficient to establish conclusively the falsity of Peck's alleged misrepresentation.  As discussed earlier, the court must view the evidence in the light most favorable to the nonmovant.  *Cory v. Stewart*, 103 F.4th 1067, 1078 (5th Cir. 2024) ("[T]he party who defended against the motion for summary judgment will have the advantage of the court reading the record in the light most favorable to him . . . and will receive the benefit of the doubt when [his factual] assertions conflict with those of the movant.").  Additionally, the court cannot make determinations of credibility.  *Favela v. Collier*, 91 F.4th 1210, 1215 (5th Cir. 2024); *Flowers v. Wal-Mart Inc.*,  79 F.4th 449, 452 (5th Cir. 2023).  In viewing the evidence in the light most favorable to Peck, the email exchange supports the inference that Peck was not involved in Allstate's rent negotiations and the $880 amount was the result of an arms length transaction between Allstate and Morales's mother.  The evidence also indicates that, to the extent there was any misrepresentation, such a misrepresentation may have been perpetrated by Morales's mother.  Therefore, Allstate has failed to establish that Peck made a material misrepresentation that warrants the application of the Fraud and Concealment provision.[5]

### c.      Peck's Alleged Fraud

Lastly, Allstate maintains that the Fraud and Concealment provision precludes Peck from recovering under the Policy because Peck committed fraud when he intentionally set his home on fire and submitted an insurance claim without disclosing his role in the fire.  In evaluating whether

---

[5] The court takes note of Peck's secondary argument that a misrepresentation in connection with Peck's ALE expenses does not warrant voiding the entire policy.  Nevertheless, it is unnecessary to address this contention, as a factual dispute exists on other grounds.

a fraudulent act, as opposed to a material misrepresentation, implicates the Fraud and Concealment

provision, Texas courts have looked to the common law elements of fraud for guidance. *McEwin*,

118 S.W.3d at 815-16; *see Weidner v. Nationwide Prop. & Cas. Ins. Co.*, 74 F. Supp. 814, 824

(E.D. Tex. 2014). Under the common law, an individual commits fraud when he makes:

    (1) a material representation;

    (2) that is false;

    (3) that the speaker knew the representation was false or made it with reckless disregard
       of the truth;

    (4) the speaker made it with the intention that it be acted upon by the other party;

    (5) the other party acted in reliance upon it; and

    (6) the other party suffered injury.[6]

*Source 4 Value v. Hoelzer*, No. 07-18-00338-CV, 2020 WL 4249744, at *3 (Tex. App.—Amarillo

July 21, 2020, pet. denied) (citing *McEwin*, 118 S.W.3d at 815-16); *Bukowski v. Lib. Ins. Co.*,

No. SA-22-CV-0272-JKP, 2022 WL 1625173, at *3 (W.D. Tex. May 20, 2022). Fraud,

however, does not have a singular all-encompassing definition. *Bukowski*, 2022 WL 1625173,

at *3. Rather, "[t]he gist of fraud is successfully using cunning, deception or artifice to cheat

another to the other's injury." *James v. Walker-Smith*, No. 4:19-CV-03485, 2020 WL 3266560,

at *11 (S.D. Tex. 2020) (quoting *McEwin*, 118 S.W.3d at 816).

    Allstate alleges two interconnected instances of fraud. First, Allstate asserts that Peck

committed fraud when he submitted an insurance claim, despite being responsible for setting the

---

[6] There are substantial similarities between the elements applied to a material misrepresentation claim and a claim of fraud. Nevertheless, the standard for fraud imposes additional requirements, like the requirement that the speaker knew the representation to be false. Accordingly, the court must ensure that the alleged violations are evaluated under the appropriate standard.

fire.  Second, Allstate asserts that Peck committed fraud by denying under oath any knowledge of the cause of the fire.  As noted above, Allstate bears the burden of proof.  Therefore, Allstate must establish, as a matter of law, that Peck committed the alleged fraud to be entitled to summary judgment.

On Page 6 of Allstate's motion, Allstate states:

a.    Concealment and Fraud Regarding Peck's Involvement in the Fire

i.    Defendant concealed his involvement in the setting of the Fire. Defendant, John Peck signed a Sworn Statement in Proof of Loss swearing under oath that he did not have any responsibility for the intentional burning of the Residence.  However, testimony and evidence obtained during the course of Allstate's investigation of the Claim indicated that Defendant was aware of and created the plan to burn the Residence.

ii.    APEX Fire prepared a report which indicates that the Fire was of incendiary origin.

iii.    Mr. Peck's cellular phone places him in the area of the property at the time of the Fire.

iv.    Mr. Peck had prior knowledge of the Fire.

Additionally, Allstate cites multiple exhibits in support of its claim.  Allstate first highlights APEX's fire report, which concluded that the fire was incendiary in nature.  Allstate also attaches the unsworn declaration of Cory Martin, the fire investigator from APEX who concluded that Peck committed arson.  Moreover, Allstate provides the deposition testimony of Chastity Sanderson ("Sanderson"), Peck's first wife.  Allstate's central contention is that Peck called Sanderson approximately seven minutes after he was released from jail.  Sanderson states that, in that phone call, Peck said he needed his vehicle, which was parked at Sanderson's house, because his house

22

was "either burning or burnt."[7]  The call, as corroborated by Peck's phone records, took place approximately two hours before the fire was reported to local authorities.  Thus, Allstate maintains that Peck's prior knowledge of the fire combined with its incendiary nature demonstrates that he intentionally burned his home.

In his Response, Peck relies on his sworn statement that (1) he did not intentionally burn his home, and (2) he did not hire someone else to burn his home.  Peck also refers to the Fire Marshal's report that concluded that the cause of the fire was "undetermined."[8]  Additionally, Peck highlights the report from Allstate's first fire investigator, who also classified the cause of the fire as undetermined.[9]  Therefore, Peck maintains that there exists sufficient evidence to demonstrate that he did not intentionally set fire to his home.

In evaluating the competing evidence, it is clear that there is a credibility determination to be made by the jury.  On the one hand, there is APEX's report and Sanderson's testimony supporting the notion that Peck intentionally set his home on fire.  On the other hand, there is Peck's testimony along with two investigative reports that support a conclusion to the contrary, or at least support the conclusion that the cause of the fire could not be determined.  Ultimately, the jury will have to decide what evidence it deems more credible.  That determination, however, is reserved for the jury and cannot be resolved at the summary judgment stage.  *Favela*, 91 F.4th at 1215; *Flowers*, 79 F.4th at 452.  Thus, the court concludes that there exists a genuine dispute of material fact as to whether Peck committed the alleged fraud.

---

[7] (Pl.'s Ex. F, Sanderson Dep. 31:4-34-20).

[8] (Def.'s Ex. C, State Marshal's Rep. 5).

[9] (Def.'s Ex. D, Donan's Rep. 5).

2.     <u>Public Policy Exclusion</u>

Alternatively, Allstate maintains that public policy bars Peck from recovering under the Policy because he committed arson.  Allstate is correct that, if Peck committed arson, he is barred from recovering under the insurance policy.  *In re United Fire Lloyds*, 578 S.W.3d 572, 582 (Tex. App.—Tyler 2019, no pet.) (recognizing arson as a defense to coverage under an insurance policy).  Arson is an affirmative defense on which Allstate bears the burden of proof.  *Id.*; *see King v. State Farm Lloyds*, No. 4:22-CV-03296, 2024 WL 4171348, at *2 (S.D. Tex. Sept. 12, 2024).  Therefore, Allstate must conclusively establish all the essential elements of the defense to be entitled to summary judgment.  *King*, 2024 WL 4171348, at *2.

Under Texas law, to establish the defense of arson via circumstantial evidence, the insurer must demonstrate (1) that the fire had an incendiary origin, (2) the insured had a motive to set a fire or cause it to be set, (3) the insured had an opportunity to set the fire or other circumstances linking the insured to the fire.  *United Fire Lloyds v. Inner Pipe Pipeline*, No. 12-22-00110-CV, 2023 WL 4307654, at *3 (Tex. App.—Tyler June 30, 2023, no pet.); *In re United Fire Lloyds*, 578 S.W.3d at 582; *see King*, 2024 WL 4171348, at *2.  Here, Allstate relies on the same evidence it cited to support its claim of fraud.  As the court noted above, Allstate has undoubtedly presented evidence that supports the conclusion that the fire had an incendiary origin,[10] that Peck had a motive to set the fire or to cause it to be set,[11] and that there were other circumstances

---

[10] (Pl.'s Ex. C, Martin's Decl. ¶ 8); (Pl.'s Ex. C-1, APEX Rep. 5).

[11] Allstate contends in its motion that Peck's motivation was financial in nature, as the fire was set the same day that Peck posted bond for his release from jail where he was being held on state charges for murder and tampering with a corpse.

linking him to the fire.[12]  Nevertheless, in light of Peck's controverting evidence, there exists a factual dispute that must be resolved by a jury.  Therefore, summary judgment is not warranted based on Allstate's affirmative defense of arson.

3.    Peck's Alleged Fraud

Allstate also seemingly asserts the defense of fraud under the common law, as opposed to the Fraud and Concealment provision of the Policy.  As the court mentioned above, however, Texas courts look to the common law elements of fraud in applying Fraud and Concealment provisions.  Additionally, Allstate does not raise any new evidence or contentions pertaining to its claim of common law fraud.  Accordingly, for the same reasons previously discussed, the court concludes that there remains a genuine dispute of material fact as to whether Peck committed common law fraud.

Allstate's motion advances many theories for barring Peck's recovery for breach of contract.  Further, Allstate has provided evidence to support its various theories.  At this stage, however, Peck has presented sufficient evidence to create a genuine dispute of material fact.  Thus, the court must deny Allstate's motion for summary judgment with respect to Peck's breach of contract claim.

D.    Peck's Extra-Contractual Claims

Allstate also asks the court to grant summary judgment as to all of Peck's extra-contractual counterclaims.  Peck asserts three overarching extra-contractual claims:

(1)    Breach of the Duty of Good Faith and Fair Dealing;

---

[12](Pl.'s Ex. F 31:4-34:20).  Sanderson's testimony supports the inference that Peck knew his house was on fire without having yet visited the site of the fire.  Additionally, the phone call in which he allegedly displayed knowledge of the fire took place two (2) hours before the fire was reported to local authorities.

(2)     Unfair Settlement Practices Under § 541.060(a) of the Texas Insurance Code; and

(3)     Failure of Prompt Payment Under §§ 542.055-542.058 of the Texas Insurance Code.

Peck bears the burden of proof at trial on the above counterclaims. *Kim v. Nationwide Mut. Ins. Co.*, 614 F. Supp. 3d 475, 482 (N.D. Tex. 2022) (recognizing that the insured bears the burden of proving its extra-contractual claims). Consequently, at the summary judgment stage, Allstate, as the movant, bears the initial burden of identifying the essential elements of Peck's extra-contractual counterclaims wherein there is no genuine dispute of material fact. *LM Ins. Inc. v. Nautilus Ins. Co.*, 723 F. Supp. 3d 519, 524 (S.D. Tex. 2024). The burden then shifts to Peck, requiring him to "go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial." *Id.*

1.     Claims for Breach of the Duty of Good Faith and Fair Dealing and Violation of Chapter 541 of the Texas Insurance Code

Under Texas law, an insured's claim for breach of the policy is distinct from, but related to, claims against the insurer for violation of extra-contractual common law and statutory duties. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 489 (Tex. 2018). Texas law recognizes that insurers have exclusive control over evaluating, processing, and denying claims and, as a result, insurers owe their insureds a common law duty of good faith and fair dealing. *Menchaca*, 545 S.W.3d at 488 (citing *Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987)); *see Tremago, L.P. v. Euler-Hermes Am. Credit Indem. Co.*, 602 F. App'x 981, 984 (5th Cir. 2015); *Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 869 (5th Cir. 2014); *Henry v. Mut. of Omaha Ins. Co.*, 503 F.3d 425, 428-29 (5th Cir. 2007). "A cause of action for breach of the duty of good faith and fair dealing exists when the insurer has no

26

reasonable basis for denying or delaying payment of a claim or when the insurer fails to determine or delays in determining whether there is any reasonable basis for denial." *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997) (citing *Arnold*, 725 S.W.2d at 167); *accord Doubletree Partners, L.P.*, 739 F.3d at 869; *Henry*, 503 F.3d at 429.  The key inquiry in a bad faith claim is the reasonableness of the insurer's conduct.  *Wells v. Minn. Life Ins. Co.*, 885 F.3d 885, 897 (5th Cir. 2018); *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 525-26 (5th Cir. 2015); *Henry*, 503 F.3d at 428-29.

An insurer's liability under an insurance contract is separate and distinct from its liability for breach of the duty of good faith and fair dealing.  *Menchaca*, 545 S.W.3d at 489; *see Lyons v. Millers Cas. Co.*, 866 S.W.2d 597, 601 (Tex. 1993); *Hudspeth v. Enter. Life Ins. Co.*, 358 S.W.3d 373, 389 (Tex. App.—Houston [1st Dist.] 2011, no pet.).  "A *bona fide* controversy is sufficient reason for failure of an insurer to make a prompt payment of a loss claim." *Higginbotham*, 103 F.3d at 459; *see Weiser-Brown Operating Co.*, 801 F.3d at 526; *Med. Care Am., Inc.*, 341 F.3d at 425; *Provident Am. Ins. Co. v. Castaneda*, 988 S.W.2d 189, 195-96 (Tex. 1998).  "As long as the insurer has a reasonable basis to deny or delay payment of a claim, even if that basis is eventually determined by the fact finder to be erroneous, the insurer is not liable for the tort of bad faith." *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 861 (5th Cir. 2003) (quoting *Higginbotham*, 103 F.3d at 459); *see Castaneda*, 988 S.W.2d at 196.

Accordingly, to succeed on a claim for breach of the duty of good faith and fair dealing, the insured must prove (1) that the insurer either denied or delayed payment of the claim and (2) that the insurer "knew or should have known that it was reasonably clear that the claim was covered." *Doubletree Partners, L.P.*, 739 F.3d at 869; *Spicewood Summit Off. Condos. Ass'n,*

*Inc. v. Am. First Lloyd's Ins. Co.*, 287 S.W.3d 461, 468 (Tex. App.—Austin 2009, pet. denied). "[A]n insurer breaches its duty of good faith and fair dealing by denying a claim when the insurer's liability has become reasonably clear." *Med. Care Am., Inc. v. Nat'l Union Fire Ins. Co.*, 341 F.3d 415, 425 (5th Cir. 2003) (quoting *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998)); *accord Spicewood Summit Off. Condos. Ass'n, Inc.*, 287 S.W.3d at 468. "An insurer does not breach its duty merely by erroneously denying a claim." *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 880 (5th Cir. 2004) (citing *U.S. Fire Ins. Co. v. Williams*, 955 S.W.2d 267, 268 (Tex. 1997)); *see Performance Autoplex II Ltd.*, 322 F.3d at 861.

Allstate highlights that a claim for breach of the duty of good faith and fair dealing shares the same predicate for recovery as claims under Chapter 541 of the Texas Insurance Code. *A&E Austin 1, Ltd. v. Nationwide Gen. Ins. Co.*, No. SA-21-CV-01031-JKP, 2023 WL 4921531, at *6 (W.D. Tex. Aug. 1, 2023); *Casey v. State Farm Lloyds*, No. 3:21-CV-346-L, 2022 WL 3702024, at *5 (N.D. Tex. Aug. 26, 2022).[13] Specifically, a claim for breach of the duty of good faith and fair dealing and a claim under Chapter 541 both require the insured to prove that the insurer's liability was reasonably clear. *Casey*, 2022 WL 3702024, at *5; *Guerrero v. State Farm Lloyds*, No. 2:19-CV-285, 2021 WL 5154784, at *4 (S.D. Tex. 2021). Therefore, if summary judgment is warranted on Peck's bad faith claim, then there can be no statutory liability under Chapter 541.

---

[13] It is unclear from Allstate's motion whether its position is that all of Peck's extra-contractual claims share the same predicate for recovery or only the extra-contractual claims arising under Chapter 541 of the Texas Insurance Code. The latter interpretation, however, is consistent with Texas law, while the former is not. Peck's extra-contractual claims arising under Chapter 542 of the Texas Insurance Code do not share the same predicate for recovery. *See Casey*, 2022 WL 3702024, at *5 (analyzing claims arising under Chapter 542 separately from the insured's breach of the duty of good faith and fair dealing and Chapter 541 claims).

*Casey*, 2022 WL 3702024, at *5 (quoting *O'Quinn v. Gen. Star Indem. Co.*, No. 1:13-CV-471, 2014 WL 3974315 at *8 (E.D. Tex. Aug. 5, 2014)).

The issue of whether an insurer's liability is reasonably clear is generally a question of fact for the jury. *A&E Austin 1, Ltd.*, 2023 WL 4921531, at *6; *Casey*, 2022 WL 3702024, at *5. In the present case, Allstate asserts that it is entitled to summary judgment because Peck cannot demonstrate that Allstate's liability was ever reasonably clear. Peck, however, contends that Allstate's liability became reasonably clear when two fire investigators classified the cause of the fire as "undetermined." Specifically, Peck cites the Fire Marshal's report, who investigated the fire on behalf of the Texas Department of Insurance. As Allstate notes, however, the Fire Marshal did not collect any samples from the scene of the fire to submit for analysis and relied primarily on a visual inspection of the home. Additionally, the Fire Marshal's report explicitly states that "[t]he criminal act of arson cannot be eliminated at this time."

Peck also cites the report of the first fire origin and cause investigator Allstate retained to investigate his claim. On April 10, 2020, Donan Engineering Co. Inc. ("Donan") completed its investigative report regarding the fire at Peck's property. Donan's report states that the "classification of the fire cause is ***Undetermined***." In defining the term, Donan's report states that an "undetermined" classification indicates that there is "insufficient information to classify [the fire] further." Moreover, Donan and the Fire Marshal's reports both explain that the reason the origin could not be determined was because the fire was so intense that no recognizable fire pattern remained. Thus, contrary to Peck's assertion, the two reports do not conclude that the fire was not incendiary in origin, such that Allstate's liability was reasonably clear. Rather, the reports

29

merely reflect the investigators' inability to classify the fire further with sufficient scientific certainty.

Moreover, the court cannot view the reports in isolation. Rather, it must assess the totality of the information that was available to Allstate at the time of its investigation. A review of the summary judgment record reveals that the two investigative reports that Peck cites do not diminish the surfeit of facts that, at the time of Allstate's investigation, suggested that Peck committed arson. On March 5, 2020, approximately two days before the fire, Peck was indicted and arrested for murder and tampering with a corpse. Peck was accused of murdering a man identified as Randy Holmes ("Holmes") and disposing of his corpse. Authorities determined that Holmes was shot, run over by a tractor, set on fire, and buried on Peck's property where the fire at issue occurred. The impact of these allegations is two-fold. First, the allegations cast suspicion on Peck's claimed property loss due to his purported participation in a crime involving fire and the use of his property to conceal evidence of the crime. Second, the inextricably intertwined nature of the criminal charges against Peck and his property loss made it difficult for Allstate, the Fire Marshal, and Donan to obtain certain information from Peck. Specifically, Donan's report notes that "[a]t the time of this study, [Peck] was advised by his attorney, Mr. Bill Morian, to answer questions related only to the house's history. Due to legal circumstances, attaining first-hand information from Mr. Peck was limited."

In addition, Allstate's motion presents uncontroverted evidence that Peck's current loss represents the fourth time that he has lost his home due to a fire. Peck experienced three home fires before the fire on March 7, 2020. Peck lost one home to a fire resulting from electrical issues, another to a fire that was caused by a lightning strike, and a third home to a fire of

undetermined origin. Peck's current claim marks the second home that he claims to have lost to a fire of undetermined origin. Additionally, the home at issue was rebuilt using the proceeds Peck obtained from a prior fire loss claim, making it the *second time* that he lost a house to a fire on the *same property*. Therefore, the questionable circumstances surrounding Peck's claim at the time of its filing evinced potential malfeasance and further obscured Allstate's responsibility.

Another notable fact that surfaced during Allstate's investigation was that the fire was first reported by Kami Godeaux. At the time of the fire, Kami Godeaux and her husband, Casey Godeaux, rented a trailer home on Peck's property. According to Peck, Kami and Casey Godeaux were family friends.[14] Due to the proximity of the Godeauxs' rental property to Peck's home, Kami Godeaux's being the first person to report the fire may not seem particularly unusual. Nevertheless, when viewed in conjunction with the myriad of suspicious circumstances surrounding Peck's loss, the Godeauxs' relationship to Peck raises questions and concerns as to whether the Godeauxs could have been complicit or aided Peck in his purported fraud.

Peck also had multiple financial motives to commit insurance fraud. At the time of the fire, Peck owed over $10,000.00 in overdue property taxes. Approximately three months before the fire, Peck retained an attorney to represent him in his criminal proceedings for $90,000.00. Peck's agreement with his attorney required him to pay $10,000.00 at the time of the contract's execution, $40,000.00 upon the return of a grand jury indictment, and $40,000.00 once the case was set for trial.[15] The grand jury indictment was returned approximately two days before the

---

[14] (Pl.'s Ex. B-17, Peck's EOU 61:11-21).

[15] (Pl.'s Ex. Q, Rusnak's Decl. ¶ 8).

fire.[16]  Consequently, Peck owed his attorney at least $40,000.00 at the time of his release.[17]

Moreover, on the morning of the fire, Peck posted a $100,000,000.00 bond to be released from

jail pending trial on the criminal charges lodged against him.  Allstate further provides evidence

that Peck was behind on his child support payments, car payments, and other financial obligations.

Consequently, Peck's claim under the Policy was shrouded in a litany of uncertainties,

inconsistencies, and ambiguities such that Allstate's liability never became reasonably clear and

remains uncertain to date.  Because Allstate's liability was never reasonably clear, Peck cannot

raise a genuine dispute of material fact on his claims for breach of the duty of good faith and fair

dealing or his claims arising under Chapter 541.  Therefore, Allstate is entitled to summary

judgment on Peck's claim for breach of the duty of good faith and fair dealing and his claims

under § 541.060 of the Texas Insurance Code.

        2.    <u>Prompt Payment Claims Pursuant to Chapter 542 of the Texas Insurance Code</u>

Allstate's final request asks the court to grant summary judgment on Peck's claims under

§§ 542.055, 542.056, and 542.058 of the Texas Insurance Code.  Sections 542.055, 542.056, and

542.058 comprise a portion of the Prompt Payment of Claims Act, which imposes certain

deadlines on insurers for the purpose of promoting the efficient resolution of claims.  *Progressive*

*Cnty. Mut. Ins. Co. v. Koetter*, No. 03-22-00275-CV, 2024 WL 5286313, at *1 (Tex.

App.—Austin Dec. 31, 2024, no pet.); TEX. INS. CODE § 542.054.  Section 542.055 requires an

insurer to acknowledge receipt of the claim, commence an investigation, and request all items the

---

[16] (Pl.'s Ex. B-17 85:9-19).

[17] (*Id.* at 86:1-3).

insurer reasonably believes will be required from the claimant within 15 days of receiving the insured's claim. TEX. INS. CODE § 542.055. Section 542.058 penalizes an insurer if, after receiving all items requested under § 542.055, the insurer fails to pay a claim before the deadlines imposed by the Prompt Payment of Claims Act.

Peck asserts that the court should deny summary judgment with respect to §§ 542.055 and 542.058 because Allstate failed to address the substance of Peck's claims. Peck is correct. Allstate's motion addresses only Peck's claims under § 542.056. Because Allstate failed to meet its initial summary judgment burden of identifying the absence of a genuine dispute of material fact, summary judgment is not warranted with respect to Peck's claims brought under §§ 542.055 and 542.058. Therefore, the court will review Peck's claim pursuant to § 542.056 to determine whether there exists a genuine dispute of material fact.

Section 542.056 provides:

(a) Except as provided by Subsection (b) or (d), an insurer shall notify a claimant in writing of the acceptance or rejection of a claim not later than the 15th business day after the date the insurer receives all items, statements, and forms required by the insurer to secure final proof of loss.

(b) If an insurer has a reasonable basis to believe that a loss resulted from arson, the insurer shall notify the claimant in writing of the acceptance or rejection of the claim not later than the 30th day after the date the insurer receives all items, statements, and forms required by the insurer.

TEX. INS. CODE § 542.056. Allstate contends that it reasonably believed that the loss resulted from arson. Thus, it claims that it is entitled to the application of the extended 30-day deadline. Additionally, Allstate maintains that it received the last required item, Justin Godeaux's ("Godeaux") deposition transcript, on August 18, 2022, and it notified Peck of the denial of his claim within 30 days of receipt.

33

In his Response, Peck points out that there is an implied limitation of reasonableness, such that the time period under § 542.056 begins when the insurer receives the last document that was "reasonably required" under § 542.055.  In *Hinojos v. State Farm Lloyds*, the Texas Supreme Court recognized that § 542.055 imposes a deadline for the insurer to request from the claimant all "'items, statements, and forms' that the insurer *reasonably believes are necessary* to evaluate the claim."  619 S.W.3d 651, 653 (Tex. 2021).  The court then declared that, pursuant to § 542.056, the insurer must notify the insured of its decision regarding the insurance claim before the statutory deadline, which may change depending on the date that the insurer receives all items reasonably required under § 542.055.  *Id.*; *see EVA RIOS v. Homesite Ins. Co.*, No. 5:23-CV-00006, 2024 WL 4984446, at *6 (S.D. Tex. Sept. 26, 2024).  Thus, the statutory period contained in § 542.056 begins to run once the insurer receives the last item that was *reasonably* required under § 542.055.

Peck, however, fails to create a genuine dispute of material fact regarding whether Justin Godeaux's deposition was reasonably necessary.  Peck advances two propositions that he claims demonstrate the unnecessary nature of Godeaux's deposition.  First, Peck highlights an excerpt of Rachal's deposition, where he failed to articulate why Allstate believed Godeaux's deposition was necessary.  In his deposition, Rachal stated that Godeaux could have had information that "may or may not [have] be[en] relevant."  Rachal also noted that he could not recall why Godeaux's deposition was necessary without "more being here for [him] to reference."  Rachal's testimony regarding Allstate's reason for seeking Godeaux's deposition falls short of an admission of superfluity.  Rather, Rachal's testimony seemingly reflects his inability to remember Justin Godeaux's identity and relevance.  Rachal's memory lapse, however, becomes increasingly

34

understandable when viewed in light of the fact that at least seven other individuals with the last name Godeaux were involved or at least mentioned during Allstate's investigation. Thus, Rachal's testimony proves little more than his need to refer to external materials to provide Peck with an accurate answer.

Regardless of Rachal's testimony, Peck's contention that Godeaux's testimony was not reasonably necessary veers towards frivolity. On March 7, 2020, Peck was released on bond into the custody of his attorney at that time, William Morian, Jr. ("Morian"), who then took him to Tractor Supply in Jasper, Texas, to meet with Justin Godeaux. From there, Godeaux allegedly drove Peck to his Aunt Penny's house in Brookeland, Texas. Consequently, Godeaux was reportedly with Peck on the morning of the fire and could account for Peck's whereabouts for at least a portion of the time leading up to the fire. Additionally, because Godeaux ostensibly spent time with Peck shortly before the fire, Allstate had reason to believe that Godeaux could offer valuable insight and information about Peck's disposition, demeanor, and mental state on the morning of the fire. Thus, despite Rachal's inability to recall Allstate's specific purpose in seeking Godeaux's testimony, the importance of his testimony is readily apparent.

Second, Peck contends that Godeaux's testimony was not reasonably necessary because Allstate did not seek Godeaux's deposition until February 10, 2022. Peck asserts that Godeaux's testimony could not have been that important to Allstate's investigation because it waited almost two years to notice his deposition. Peck's assertion, however, overlooks Allstate's reasons for the delay. In addition to the challenges arising from COVID-19, Allstate maintains that it was unable to obtain Godeaux's contact information from Peck, despite multiple attempts. On

35

November 9, 2021, counsel for Allstate sent a letter to Peck's counsel that stated "Allstate *reiterates* its requests that Mr. Peck provide the last known address and telephone number . . . [for] Justin Godeaux." Accordingly, the letter indicates that this was not Allstate's first attempt at obtaining Godeaux's contact information. Additionally, the letter points out that Peck had previously responded to Allstate's inquiries by stating that he did not have Godeaux's contact information, despite Godeaux's being his cousin and his having a sufficiently close relationship with Godeaux for him to be the first family member with whom Peck met following his release from jail. Consequently, the letter asks Peck to contact his family members to request Godeaux's contact information.

Peck's counsel, Morian, responded the same day, stating simply that he was "unable to acquire this information." A month later, on December 8, 2021, Morian provided contact information for Godeaux that he gathered, not from any family or investigative source, but from "truepeoplesearch.com." The contact information that Morian provided, however, was incorrect. As a result, Allstate did not have the correct contact information for Godeaux until shortly before his deposition was noticed on February 10, 2022. Peck's Response, however, conveniently omits his own role in Allstate's delay in seeking Godeaux's deposition.

Peck has provided some evidence to support his claim of unreasonable delay. That evidence, however, is insufficient to raise a genuine dispute of material fact. As noted above, the court must view all the facts and draw all reasonable inferences in favor of the nonmoving party. *Ford v. Anderson County*, 102 F.4th 292, 306 (5th Cir. 2024). Nevertheless, the Fifth Circuit has recognized that "our deference has a floor—reasonableness. If the non-movant's assertions are

mere 'conclusory allegations,' 'unsubstantiated assertions,' or only supported by a 'scintilla of evidence,' it would be unreasonable to accept them over the movant's substantiated factual assertions." *Cory*, 103 F.4th at 1078. Here, Peck's assertions are not supported by sufficient controverting evidence, as he does not address the documented and substantiated factual assertions that Allstate advances. Accordingly, Peck has failed to raise a genuine dispute of material fact on his claim of unreasonable delay under § 542.056.

III.    Conclusion

For the foregoing reasons, Allstate's Partial Motion for Summary Judgment (#16) is GRANTED in part and DENIED in part. Summary judgment is granted on Peck's claims under § 541.060 and § 542.056 of the Texas Insurance Code and his claim for breach of the duty of good faith and fair dealing. Summary judgment, however, is denied with respect to Peck's claim for breach of contract and his extra-contractual claims arising under § 542.055 and § 542.058 of the Texas Insurance Code.

SIGNED at Beaumont, Texas, this 7th day of February, 2025.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE